## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10582

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2016

Lyle W. Cayce
Clerk

HELEN NICHOLSON,

      Plaintiff – Appellant

v.

SECURITAS SECURITY SERVICES USA, INCORPORATED,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Helen Nicholson was employed by Securitas, a security staffing company. This dispute arises from her placement as a receptionist at a company called Fidelity. At Fidelity's request, Securitas removed Nicholson from Fidelity's office and was unable to place her elsewhere. Nicholson brought suit under the Age Discrimination in Employment Act. The district court granted Securitas's motion for summary judgment. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2001, FMR Co., Inc., which the parties refer to as Fidelity, contracted with Jones Lang LaSalle to hire receptionists for its Westlake, Texas, office.

No. 15-10582

Helen Nicholson was hired to work as one of these receptionists. In 2006, Fidelity and Securitas entered into a staffing agreement. Fidelity requested Securitas hire Nicholson and maintain her current position as a receptionist for Fidelity's Westlake building. Securitas complied.

The staffing agreement between Fidelity and Securitas specified that "Fidelity reserves the right . . . to request [Securitas] to replace specific Personnel." It also specified that: "[Securitas] shall not discriminate against any employee . . . because of . . . age . . . in any of its activities under this contract . . . [including] the following: recruitment . . . ; demotion, transfers, or employment upgrading; layoff or termination . . . ." The employment contract Nicholson signed with Securitas specified: "I am an employee of Securitas and I am not employed by the client or facility to which I am assigned."

There is evidence that Nicholson was "well-liked" at Fidelity. Even so, in March 2012, Fidelity asked Securitas to remove her. Fidelity told Securitas that Nicholson was unable to perform new technology-related tasks. Securitas removed Nicholson from Fidelity on July 20, 2012. At the time, Nicholson was 83 years old. Nicholson's replacement was age 29. Securitas then terminated Nicholson ten days later after determining there were no other positions Nicholson could fill.

Nicholson filed suit against Securitas and Fidelity, alleging they terminated her due to her age. She was able to settle quickly her claim against Fidelity, leaving only Securitas as a defendant. Nicholson alleged Securitas terminated her in violation of Section 623(a) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, and sought liquidated damages, injunctive relief, and attorney's fees.

Securitas moved for summary judgment. The district court granted the motion. First, and without either party having briefed the point, the district court determined that "because Fidelity, and not Securitas, 'retained the power

2

No. 15-10582

to require all assigned personnel to comply with all of its instructions, to set the work hours, and to provide the assignment detail/guidelines for all assignment personnel, Nicholson failed to prove Securitas was her employer for purposes of the'" ADEA.  Second, the district court determined, in the alternative, Nicholson could not meet her ultimate burden to show Securitas would not have terminated her but for her age.  Nicholson filed for reconsideration, but the motion was denied.  This appeal followed.

## DISCUSSION

A grant of summary judgment is reviewed *de novo*.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327 (5th Cir. 2009).  Summary judgment should be entered only if the parties are on notice of the grounds on which judgment is entered.  FED. R. CIV. P. 56(f)(1).  The district court's first ground for entering summary judgment for Securitas had not been briefed by either party.  As a result, it was error for the district court to enter summary judgment on this ground. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Nonetheless, when a district court improperly enters summary judgment, we review for harmless error. *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011).  The error was harmless here because Nicholson briefed her objections to the district court's reasoning in a Rule 59(e) motion for reconsideration, and the court then denied the motion. *See Simmons v. Reliance Standard Life Ins. Co. of Tex.*, 310 F.3d 865, 869 n.4 (5th Cir. 2002).

Because the district court considered the evidence Nicholson provided in her Rule 59(e) motion, we review the court's decision *de novo*, the same as we would had all this been presented to the court at the time of the initial grant of summary judgment. *See Templet v. HydroChem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).  That also is our standard of review for the second ground of the

district court's entry of summary judgment for Securitas, which had been fully briefed by both parties at the time of the initial summary judgment.

## I.     *Identifying Nicholson's employer for ADEA purposes*

The first ground for the district court's entry of summary judgment for Securitas was that Securitas was not Nicholson's employer because Fidelity controlled most of Nicholson's work conditions.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). We use a four-part test to determine whether "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir. 1983). The district court relied on this four-factor "right to control" test to find that Securitas was not Nicholson's employer.

It was unnecessary for the district court to apply that test. In a recent decision, we held that the "'right to control test' is not implicated" when there is an admission by a defendant of employment. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228 (5th Cir. 2015). Here, Securitas twice admitted that it employed Nicholson, first in the contract it signed with Nicholson, and second in its answer to Nicholson's complaint where it averred that Nicholson was its employee. Nicholson, for her part, testified that while Fidelity assigned her work, her true employer was Securitas. Securitas's brief in effect concedes this ground and makes no attempt to defend this aspect of the district court's opinion. Because Securitas has admitted that it was Nicholson's employer, we accept that as a fact as we review the summary judgment order. The district court erred as to the identity of the employer.

No. 15-10582

## II.    *Securitas's liability for discrimination under the ADEA*

The second ground for the district court's entry of summary judgment was that Securitas did not discriminate against Nicholson.  Under the ADEA, Nicholson may prove her claim with either direct or circumstantial evidence. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Because Nicholson's claim is based on circumstantial evidence, we use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Nicholson "must put forth a prima facie case, at which point the burden shifts to [Securitas] to provide a legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  If Securitas articulates such a reason, Nicholson must then rebut Securitas's explanation as pretextual, that is, she must prove Securitas would not have terminated her but for her age. *Id.*

Both parties agree Nicholson has asserted a prima facie case.  We therefore turn to whether Securitas has shown a proper reason for its actions. On these facts, Securitas could be seen as having made two employment decisions.  The first was honoring Fidelity's request that Nicholson no longer work for Fidelity.  The second is Securitas's firing of Nicholson after no other placement could be made.  The district court held there was no liability for either action.  We separately address each employment decision.

### A. *Fidelity's request for reassignment*

A "staffing agency is liable for the discriminatory conduct of its joint-employer client if it [1] participates in the discrimination, or [2] if it knows or should have known of the client's discrimination but fails to take corrective measures within its control." *Burton*, 798 F.3d at 229.  The first option, participation in the discrimination, was not explained in *Burton.*  It is an open-ended concept, of uncertain meaning.  The second option, liability based on a

5

finding that a staffing agency knows or should have known of the discrimination, is a clearer standard.

The *Burton* court adopted the two different ways to prove discrimination from this language in the EEOC Enforcement Guide:

> The [staffing] firm is liable if it participates in the client's discrimination. For example, if the firm honors its client's request to remove a worker from a job assignment for a discriminatory reason and replace him or her with an individual outside the worker's protected class, the firm is liable for the discriminatory discharge. The firm also is liable if it knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control.

*Id.* at 228 (quoting U.S. EQUAL EMP'T OPPORTUNITY COMM'N, EEOC No. 915.002, ENFORCEMENT GUIDANCE: APPLICATION OF EEO LAWS TO CONTINGENT WORKERS PLACED BY TEMPORARY EMPLOYMENT AGENCIES AND OTHER STAFFING FIRMS, at 2260 (1997)).

Though perhaps not clear from the language of the Guidance, we conclude that the proper understanding of the *Burton* panel's language is that the staffing agency must have knowledge of the discrimination to establish its "participation" or failure to take corrective action. Specifically, we hold that a staffing firm participates in discrimination by honoring a client's discriminatory transfer request only if it knows or should have known the client's reasons were discriminatory. Several reasons compel this result.

First, we conclude that "participat[ing] in the *discrimination*" implies that there must be knowledge of the discrimination. Second, the other *Burton* category of liability contains an actual and constructive knowledge standard. We see no reason to read the two methods of creating liability differently. Any other interpretation would be contrary to the *McDonnell Douglas* framework, which requires knowledge, actual or constructive, of discriminatory intent for

there to be liability. *See, e.g.*, *Harilall v. Univ. Health Sys. Dev. Corp.*, 174 F.3d 197, 1999 WL 152923 (5th Cir. 1999).

Nicholson therefore needed to show that Securitas knew or should have known of discrimination by Fidelity, then participated in it in some way or failed to take corrective action. We see no claim that Securitas itself had a discriminatory motive independent of what Fidelity may have intended.

As to actual knowledge, Nicholson concedes in her brief and at oral argument that Securitas had no actual knowledge of any discrimination. She limits her arguments to whether Securitas should have known of Fidelity's discrimination. For this, Nicholson points to the fact that Securitas failed to inquire into the circumstances of Fidelity's firing of Nicholson. For instance, Securitas Branch Manager Dan Hickey, who reassigned Nicholson, agreed with the statement that he "took [Fidelity's] word for it that [Nicholson] was not able to do the job." There also was testimony by Glenda Smith, the human resources manager for Securitas when Nicholson was employed. Smith agreed that she generally took the "employee's side of the story." Finally, relevant evidence comes from this Securitas guideline: "Inefficient or substandard performance" is an action that "normally do[es] not result in immediate termination" and instead is "addressed . . . through counseling."

We agree with Nicholson that there was some evidence which created a genuine dispute of material fact as to whether Securitas should have known of discrimination by Fidelity. Securitas admits that it failed to investigate the circumstances of Fidelity's reassignment request, including not even asking Nicholson for an explanation before removing her from Fidelity. Glenda Smith's testimony, though somewhat confusing and inconsistent, provides evidentiary support for the claim that Securitas deviated from standard company practices by not investigating the reasons Fidelity wanted Nicholson removed. Smith agreed with the statement that "branch managers would

investigate the complaints" and that "their job was to check out" such complaints. Smith did not remember there being many times that "a client request[ed] somebody to be removed," but such a circumstance "was always investigated." Indeed, when asked the question of what would happen if "a customer said that someone would not be able to learn new technology," Smith responded: "like I said, it's going to be a branch manager [to] go out and verify." Finally, Smith later agreed with Nicholson's attorney that Hickey should have contacted Fidelity: "Dan['s] . . . responsibility would be to go out and verify" the truth of a complaint.

If Securitas failed to follow its usual practices in responding to a client's desire to have an employee removed, such a deviation can support Nicholson's claim that the company should have known of the alleged discrimination. As we have held, an "employer's variation from standard evaluation practices" is evidence of discriminatory intent. *Boehms v. Crowell*, 139 F.3d 452, 459 (5th Cir. 1998). Nicholson has created a factual dispute of whether Securitas should have known of Fidelity's possibly discriminatory transfer request through its failure to investigate.

Securitas did not in its briefing address Nicholson's second piece of evidence relevant to this issue, namely, the Securitas guideline stating that "[i]nefficient or substandard performance" is an action that "normally do[es] not result in immediate termination" and instead is "addressed . . . through counseling." How that guideline fits with the facts of this case is not clear, but it also leaves open a factual question.

For these reasons, we REVERSE the district court on this ground.

### B. *Securitas's firing of Nicholson*

The second employment decision was Securitas's firing of Nicholson ten days after she was removed from the Fidelity outfit. Securitas argues that

there was no other opening for Nicholson, and Nicholson refused to obtain a "security guard card," which might have opened other job opportunities for her. Nicholson, in her deposition, could not recall whether she was offered a chance to obtain such a card. Later, in a sworn declaration, she averred that she was not offered a chance to obtain a card.

We summarize the relevant evidence this way. First, Nicholson testified repeatedly that she does not believe Securitas discriminated against her. She also stated that Securitas treated her well. In fact, Nicholson testified that the only malefactor was Fidelity. Second, given the length of time Nicholson served with Fidelity, her pay was considerably higher than that of the average receptionist. This meant there were no other receptionist jobs available to Nicholson. Even taking into account Nicholson's declaration that she was willing to obtain a card, the only position this would have opened up was that of a security guard. Nicholson, however, rejected this position, claiming she was ill-suited for that role.

We find no error in the district court's analysis, with one caveat. Depending on the outcome of the district court's re-evaluation of whether Securitas did enough once learning Fidelity wanted Nicholson removed, the court should also consider whether that re-evaluation affects its earlier analysis of Securitas's decision to terminate her.

AFFIRMED in part and REVERSED in part. We REMAND to the district court for further proceedings.

9