**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3086
_____

REV. DR. WILLIAM DAVID LEE, a/k/a W. David Lee

v.

SIXTH MOUNT ZION BAPTIST CHURCH OF
PITTSBURGH, d/b/a Sixth Mount Zion Missionary Baptist
Church; TIMOTHY RALSTON, Individually and d/b/a Sixth
Mount Zion Missionary Baptist Church; NATHANIEL
YOUNG, Individually and d/b/a Sixth Mount Zion
Missionary Baptist Church; GEOFFREY KEVIN JOHNSON,
Individually and d/b/a Sixth Mount Zion Missionary Baptist
Church; ROCHELLE JOHNSON, Individually and d/b/a
Sixth Mount Zion Missionary Baptist Church; ALEXANDER
HALL, Individually and d/b/a Sixth Mount Zion Missionary
Baptist Church; RAYMOND JACKSON, Individually and
d/b/a Sixth Mount Zion Missionary Baptist Church; JAMES
GROVER, Individually and d/b/a Sixth Mount Zion
Missionary Baptist Church; ARTHUR HARRIS, Individually
and d/b/a Sixth Mount Zion Missionary Baptist Church;
JEROME TAYLOR, Individually and d/b/a Sixth Mount
Zion Missionary Baptist Church; TOMMIE NELL TAYLOR,
Individually and d/b/a Sixth Mount Zion Missionary Baptist
Church; ROY ELDER, Individually and d/b/a Sixth Mount
Zion Missionary Baptist Church

Rev. Dr. William David Lee,
Appellant

―――――――

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:15-cv-01599)
District Judge: Hon. Nora B. Fischer

―――――――

Argued July 12, 2018

―――――――

Before: SHWARTZ, ROTH, and RENDELL, <u>Circuit Judges</u>.
(Filed: September 5, 2018)

Gregg L. Zeff        [ARGUED]
Zeff Law Firm, LLC
100 Century Parkway, Ste 305
Mount Laurel, NJ 08054
        *Counsel for Appellant*

Alan E. Cech
Adam K. Hobaugh
Murtagh, Hobaugh & Cech, LLC
110 Swinderman Road
Wexford, PA 15090

Daniel Blomberg     [ARGUED]
Eric Rassbach
The Becket Fund for Religious Liberty
1200 New Hampshire Ave, NW

Suite 700
Washington, D.C. 20036

*Counsel for Appellee*

Andrew G.I. Kilberg
David W. Casazza
Brian M. Lipshutz
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Counsel for Amici Curiae Church of God in Christ, Inc., mPact Churches, Plymouth Brethren, and Bishop William H. Stokes*

Todd R. Geremia
Jones Day
250 Vesey Street
New York, NY 10281

Victoria Dorfman
Mark R. Kubisch
Daniel D. Benson
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001

*Counsel for Amici Curiae Douglas Laycock, Michael W. McConnell, Thomas C. Berg, Carl H. Esbeck, Richard W. Garnett, and Robert F. Cochran*

---

OPINION

---

SHWARTZ, Circuit Judge.

Reverend Dr. William David Lee was terminated from his position as pastor of the Sixth Mount Zion Missionary Baptist Church ("the Church") and sued the Church for allegedly breaching his employment contract. The District Court granted summary judgment in the Church's favor because the adjudication of Lee's contract claim would impermissibly entangle the Court in religious doctrine in violation of the First Amendment's Establishment Clause. We agree and will affirm.

I

A[1]

In December 2012, the Church's Deacon board recommended, and the Church voted unanimously to accept, Lee for the position of church pastor. In March 2013, Lee and Church officials executed an employment contract ("the Agreement") establishing that Lee would serve as the Church's

---

[1] Lee filed a motion for summary judgment, and each party filed a statement of material facts. Lee did not respond to the Church's statement of material facts, which were based on Lee's deposition testimony and Church documents quantifying the financial and attendance decreases under Lee's tenure. Lee has not challenged the District Court's use of the Church's additional facts, and we will accept them too.

4

pastor for a twenty-year term, beginning December 2012 and subject to for-cause early termination. If the Church removed Lee without cause before the twenty-year term expired, it would be required to pay Lee the salary and benefits he would have received for the unexpired term of the Agreement, subject to additional reductions. The Agreement specified that Lee could be terminated for cause if he "commits any serious moral or criminal offense ("serious offense")—including but not limited to adultery, embezzlement, or fraud—is convicted of a felony, or commits any other act which is a violation of applicable law" or if he became incapacitated through illness or injury. App. 39 (Agreement § 12.3).

The Agreement also allowed either party to terminate upon "material breach" of the Agreement and specified that the enumerated rights of termination existed in addition to "any other rights of termination allowed . . . by law." App. 39 (Agreement § 12.3). Under the Agreement, Lee agreed to "abide by the employment policies and procedures existing or established by the Church from time to time," App. 37 (Agreement § 7c) (capitalization altered). This provision incorporated the Church's constitution and bylaws and was a "material term" of the Agreement. App. 38 (Agreement § 11). Furthermore, the Agreement required Lee to "lead the pastoral ministries of the Church and . . . work with the Deacons and Church staff in achieving the Church's mission of proclaiming the Gospel to believers and unbelievers." App. 35 (Agreement § 2.5) (capitalization altered).

All executing parties understood that the congregation was required to approve the Agreement for it to become effective. During an April 2013 congregation meeting, Lee acknowledged that his failure to perform his job "would

5

constitute cause for termination under the Agreement." App. 165 ¶¶ 25-27. He also said that "just cause" would occur if the Church "[was] not growing . . . [was] stagnant, . . . [or was] not a better place," and that "if [he did not] perform [his] duties well, [he would be] out." App. 166-67 ¶¶ 28-32. Based on these statements, the congregation approved the Agreement.

Twenty months later, in December 2014, Church leaders gathered the congregation and recommended that the Church "vacate the pulpit immediately," "void the pastor's[] employment contract," and approve the severance terms. App. 101 ¶ 16; App. 164 ¶ 16. They presented three reasons for their recommendation: (1) "Failures in Financial Stewardship," (2) "Failures in Spiritual Stewardship," and (3) "Failure[s] to Respond to Church Leaders." App. 45. Specifically, the Church reported that from 2013-14, there was a 39% decline in tithes and offerings, a 32% drop in Sunday morning worship attendance, a 61% decrease in registered members, a doubling of Church expenditures, and a decline in the quality of the Church's community outreach. Furthermore, according to the Church, Lee scheduled but then cancelled several meetings to discuss these financial and ministerial issues between June and December 2014. Based on the recommendations of Church leaders, the congregation voted in January 2015 to terminate Lee's employment.

B

Lee filed a complaint against the Church and eleven of its deacons, alleging breach of contract due to termination without cause and seeking $2,643,996.40 in damages. The District Court dismissed Lee's claims against the individual deacons because they were not parties to the Agreement.

Lee moved for summary judgment on his breach of contract claim against the Church and both parties submitted briefs, with the Church asserting several defenses,[2] including that Lee committed material breach of contract. Lee did not file a reply brief. After briefing, the District Court "became skeptical" that the case could proceed under the First Amendment's Free Exercise and Establishment Clauses and ordered both parties to file additional briefs addressing whether the "ministerial exception," grounded in the Religion Clauses of the First Amendment, prevented the court from adjudicating Lee's contract claim. Lee v. Sixth Mount Zion Church of Pittsburg, Civ. No. 15-1599, 2017 WL 3608140, at *9 (W.D. Pa. Aug. 22, 2017). After receiving supplemental briefs, the District Court determined that (1) the Agreement could be terminated by one party upon the other party's material breach, (2) Lee failed to respond at all to the Church's defenses, and (3) the matter could not proceed due to the application of the First Amendment's ministerial exception, which restricts government involvement in religious affairs. Id. at *15, 22, 37. The District Court therefore denied Lee's motion for summary judgment and entered judgment in favor of the Church. Id. at *37. Lee appeals.

---

[2] In addition to asserting Lee committed material breach of contract, the Church alleged the following defenses: lack of consideration, unconscionability, fraud in the inducement, fraud in the execution, duress, misrepresentation, and the existence of a subsequent agreement which modified the Agreement.

7

II[3]

We review orders granting summary judgment de novo. Daubert v. NRA Grp., LLC, 861 F.3d 382, 388 (3d Cir. 2017). Summary judgment is warranted if a party shows there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Id. (citation and internal quotation marks omitted).

A court may grant summary judgment to a non-moving party, as long as the opposing party has notice and an opportunity to respond. See Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). In fact, with notice to the parties, a court may enter summary judgment in favor of a non-moving party sua sponte. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence" (emphasis omitted)); Gibson v. Mayor of Wilmington, 355 F.3d 215, 222-23 (3d Cir. 2004) (recognizing authority "to allow a court to grant summary judgment to a non-moving party" but requiring that the other party is "on notice that the court is considering a sua sponte summary judgment motion" (emphasis and citation omitted)).

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Here, the District Court granted summary judgment to the Church, a non-moving party, after the District Court gave notice to the parties that it was considering the applicability of the ministerial exception and receiving supplemental briefing regarding "whether and to what extent the . . . exception . . . affects further adjudication of this matter." Lee, 2017 WL 3608140, at *9. The District Court's order seeking arguments on the ministerial exception specifically referenced Rule 56(f), which allows courts to grant judgment to a non-moving party or grant judgment on grounds not raised by a party, thereby providing notice that it was considering entering summary judgment based on the ministerial exception. Under these circumstances, Lee received adequate notice and opportunity to present all relevant arguments and evidence concerning the ministerial exception. Accordingly, the District Court's order granting summary judgment to the Church, a non-moving party, was procedurally sound, and we will proceed to examine the merits.[4]

---

[4] The ministerial exception is an affirmative defense. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 195 n.4 (2012) (stating that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar"). Although the District Court, not the Church, first raised the ministerial exception, the Church is not deemed to have waived it because the exception is rooted in constitutional limits on judicial authority. See E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc., 884 F.3d 560, 581-82 (6th Cir. 2018) (holding that a defendant "has not waived the ministerial-exception by failing to raise it . . . because '[t]his constitutional protection is . . . structural'" (citation omitted)); Conlon v. InterVarsity Christian Fellowship, 777 F.3d 829, 836 (6th Cir. 2015)

9

III

Lee argues that the ministerial exception does not apply and the District Court erroneously granted judgment to the Church. We disagree.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment's Establishment Clause prevents "excessive government entanglement with religion," while its Free Exercise Clause "protects not only the individual's right to believe and profess whatever religious doctrine one desires, but also a religious institution's right to decide matters of faith, doctrine, and church governance." Petruska v. Gannon Univ., 462 F.3d 294, 306, 311 (3d Cir. 2006) (internal citation and quotation marks omitted).

In Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C., 565 U.S. 171, 181, 188 (2012), the Supreme Court recognized, based on these two Clauses, a "ministerial exception" that "bar[s] the government from

_____

(explaining that Hosanna-Tabor's rationale for recognizing the ministerial exception establishes that "the Constitution does not permit private parties to waive the First Amendment's ministerial exception" because "[t]he constitutional protection is not only a personal one; it is a structural one that categorically prohibits federal and state governments from becoming involved in religious leadership disputes"). Moreover, Lee did not argue before the District Court that the Church waived the defense. Therefore, it was appropriate for the District Court to consider the ministerial exception.

10

interfering with the decision of a religious group to fire one of its ministers." Hosanna-Tabor involved a disabled religion teacher who was fired from a religious school and sued, alleging that her termination violated the Americans with Disabilities Act. 565 U.S. at 176-80. The Supreme Court held, on a motion for summary judgment, that the suit was barred under the ministerial exception because "[t]he members of a religious group put their faith in the hands of their ministers," and "[r]equiring a church to accept or retain an unwanted minister . . . . interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." Id. at 180-81, 188-89, 194. "By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments[,]" and "[a]ccording the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions." Id. at 188-89. Even though the discharged teacher did not seek reinstatement at the school and instead requested frontpay, "[a]n award of such relief would operate as a penalty on the Church for terminating an unwanted minister, and would be no less prohibited by the First Amendment than an order overturning the termination," since it would still "depend on a determination that [the religious school] was wrong to have relieved [the teacher] of her position, and it is precisely such a ruling that is barred by the ministerial exception." Id. at 194.

Hosanna-Tabor involved a statutorily-based employment discrimination suit, and the Supreme Court explicitly declined to state whether the ministerial exception "bars other types of suits, including actions by employees

11

alleging breach of contract . . . by their religious employers." Id. at 196. Before Hosanna-Tabor, our Court recognized that the ministerial exception precludes, under the Free Exercise Clause, judicial action or application of state or federal law limiting a religious organization's choice of spiritual messenger. Petruska, 462 F.3d at 306, 310. We also noted that "a church is always free to burden its activities voluntarily through contract, and such contracts are fully enforceable in civil court" because "[e]nforcement of a promise, willingly made and supported by consideration, in no way constitutes a state-imposed limit upon a church's free exercise rights." Id. at 310 (citation and internal quotation marks omitted). Even assuming a church can contractually limit its free exercise rights,[5] a court nonetheless must be cognizant of the ministerial exception when asked to adjudicate a contractual dispute, as a court's resolution of the dispute may involve "excessive government entanglement with religion," and thereby offend the Establishment Clause. Id. at 311 (citation and internal quotation marks omitted). Such "[e]ntanglement may be substantive—where the government is placed in the position of deciding between competing religious views—or procedural— where the state and church are pitted against one another in a protracted legal battle." Id. Thus, a court may resolve only disputes that "turn[] on a question devoid of doctrinal implications" and "employ neutral principles of law to adjudicate." Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc., 684 F.3d 413, 418-19 (3d Cir. 2012); see also Rweyemamu v. Cote, 520 F.3d

---

[5] Since we resolve this case on entanglement grounds, we need not address whether Hosanna-Tabor allows for contractual waiver of free exercise rights, as acknowledged in Petruska.

198, 207 (2d Cir. 2008) (stating that the ministerial exception is not a "complete barrier to suit" and that "a case may proceed if it involves a limited inquiry that . . . can prevent a wide-ranging intrusion into sensitive religious matters" (internal citation and quotation marks omitted)).

Here, the parties dispute whether Lee was properly terminated with or without cause in accordance with the employment agreement. Section 12.3 of the Agreement allows either party to terminate the contract upon the "material breach" of the Agreement's terms.[6] App. 39. Material breach

---

[6] The Agreement provision states, in full:

> Termination for Cause: This AGREEMENT may be terminated at the option of either party upon thirty (30) days prior written notice by either party of the material breach of the terms of this AGREEMENT by the other party, which breach is not cured within such thirty (30) days. The rights of termination set forth in this contract are in addition to any other rights of termination allowed to either party by law. Without limiting other rights or grounds for termination which the CHURCH may have under this Agreement or by law, it is agreed that the CHURCH may terminate this Agreement for cause upon the occurrence of any of the following events:
>
> i. The pastor commits any serious moral or criminal offense ("serious offense")—including but not limited to adultery, embezzlement, or fraud—is convicted of

13

is not defined in the contract, but the Agreement identifies as a "material term" the requirement that Lee "[w]ill abide by the employment policies and procedures existing or established by the Church from time to time." App. 37 (Agreement § 7c), 38 (§ 11). The terms of the Agreement, which incorporate the Church's constitution and bylaws, establish that Lee's role as pastor involved spiritual leadership in furthering the mission of the Church and that he could be removed for failing in this role.

The Church argues that Lee materially breached the Agreement by failing to provide adequate spiritual leadership, as reflected in decreased church contributions and attendance during Lee's tenure. In particular, the Church cites a report by a joint board of Deacons and Trustees discussing, among other things, Lee's "failures in spiritual stewardship" reflected by a "drop in [the] number of registered members," "drop in [the] number of Sunday morning worshippers," and "drop in [the] level of tithes and offerings," and concludes that the Church's "capacity to cultivate new ambassadors for Christ has grown progressively more negative than positive over the two years

a felony, or commits any other act which is a violation of applicable law (except for misdemeanors or traffic offenses); or

ii. The pastor becomes incapacitated by reason of illness, injury or other disability so that he cannot, in the reasonable good faith opinion of the Church, fully carry out and perform his duties and responsibilities under this Agreement for a period of at least six (6) months.

App. 39 (Agreement § 12.3).

14

of Pastor Lee's leadership," "[he] dimi[ni]shed [the Church's] capacity to fulfill the great mission" described in "Matt[hew] 28:19-20," and "[u]nder [his] leadership we were unable to launch and sustain the type of ministries likely to promote the spiritual health of families, neighborhoods, and the city." App. 51-55 (emphasis omitted and capitalization altered). Lee has not pointed to any materials in the record to contradict the Church's reasons for his dismissal but instead responds that the case turns on "the question of whether or not the attendance and financial issues plaguing [the Church] were [Lee's] fault. . . ." Reply Br. at 3.

While the amount of church contributions and members is a matter of arithmetic, assessing Lee's role, if any, in causing decreased giving and reduced membership in the Church requires a determination of what constitutes adequate spiritual leadership and how that translates into donations and attendance—questions that would impermissibly entangle the court in religious governance and doctrine prohibited by the Establishment Clause. See, e.g., Fratello v. Archdiocese of N.Y., 863 F.3d 190, 203 (2d Cir. 2017) ("Judges are not well positioned to determine whether ministerial employment decisions rest on practical and secular considerations or fundamentally different ones that . . . are perfectly sensible— and perhaps even necessary—in the eyes of the faithful."); Rweyemamu, 520 F.3d at 209 ("[H]ow are we, as Article III judges, to gainsay the Congregatio Pro Clericis' conclusion that Father Justinian is insufficiently devoted to ministry? How are we to assess the quality of his homilies?"); Minker v. Balt. Annual Conference of United Methodist Church, 894 F.2d 1354, 1357 (D.C. Cir. 1990) ("[E]valuation of the 'gifts and graces' of a minister must be left to ecclesiastical institutions." (citation omitted)). Moreover, parsing the precise reasons for

Lee's termination is akin to determining whether a church's proffered religious-based reason for discharging a church leader is mere pretext, an inquiry the Supreme Court has explicitly said is forbidden by the First Amendment's ministerial exception. Hosanna-Tabor, 565 U.S. at 194-95 (rejecting the argument that a church's religious-based reason for firing a teacher was mere pretext by explaining that the argument "misses the point of the ministerial exception," which "is not to safeguard a church's decision to fire a minister only when it is made for a religious reason" but "instead [to] ensure[] that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,'—is the church's alone" (citation omitted)), id. at 205-06 (Alito, J., & Kagan, J., concurring) (explaining that engaging in the pretext inquiry to "probe the real reason" for a church leader's firing would require impermissible judgments about church doctrine and how important particular religious beliefs are (emphasis omitted)); see also Werft v. Desert Sw. Annual Conference of the United Methodist Church, 377 F.3d 1099, 1103 (9th Cir. 2004) ("[I]t is the decision [by a church to terminate a minister] itself which is exempt[;] the courts may not even look into the reasoning."); Rweyemamu, 520 F.3d at 207 ("[T]he First Amendment prohibits . . . [courts] from inquiring into an asserted religious motive to determine whether it is pretextual." (internal citation and quotation marks omitted)); Minker, 894 F.2d at 1360 ("[A]ny inquiry into the Church's reasons for asserting that [the pastor] was not suited for a particular pastorship would constitute an excessive entanglement in its affairs."). Such inquiry would intrude on internal church governance, require consideration of church

doctrine, constitute entanglement prohibited under the ministerial exception, and violate the Establishment Clause.[7]

Our sister circuit courts have repeatedly dismissed breach of contract claims asserted by terminated religious leaders against their religious institution employers based on the ministerial exception. See Bell v. Presbyterian Church (U.S.A.), 126 F.3d 328, 329-32 (4th Cir. 1997); Lewis v. Seventh Day Adventists Lake Region Conference, 978 F.2d 940, 941-43 (6th Cir. 1992); Natal v. Christian & Missionary

---

[7] While we focus on entanglement, we are also mindful that the ministerial exception "applies to any claim, the resolution of which would limit a religious institution's right to choose who will perform particular spiritual functions," even outside the context of entanglement. Petruska, 462 F.3d at 299. Courts have recognized that church decisions regarding its choice of religious leader are especially sacrosanct, and any intrusion upon such decisions would violate the right of free exercise. Hosanna-Tabor, 565 U.S. at 188, 204; see also Werft, 377 F.3d at 1103 ("[T]he ministerial relationship lies so close to the heart of the church that it would offend the Free Exercise Clause simply to require the church to articulate a religious justification for its personnel decisions." (citation omitted)); Minker, 894 F.2d at 1356-57 ("[D]etermination of whose voice speaks for the church is per se a religious matter. We cannot imagine an area of inquiry less suited to a temporal court for decision[.]"); McClure v. Salvation Army, 460 F.2d 553, 558-59 (5th Cir. 1972) ("The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern.").

All., 878 F.2d 1575, 1576-77 (1st Cir. 1989); Hutchinson v. Thomas, 789 F.2d 392, 392-96 (6th Cir. 1986). Indeed, we are not aware of any court that has ruled on the merits (i.e., not applied the ministerial exception) of a breach of contract claim alleging wrongful termination of a religious leader by a religious institution. Instead, there have been only cases allowing a discharged plaintiff the opportunity to proceed beyond the pleading stage and attempt to show with discovery that resolution of his or her claim would not entangle courts in internal religious doctrine and governance. See Petruska, 462 F.3d at 310-12 (vacating and remanding the district court's dismissal of a chaplain's breach of contract claim alleging that religious university changed—through restructuring—the responsibilities she was entitled to have, and stating that the claim at the "outset" did not turn on an ecclesiastical inquiry, but if further proceedings "raise issues which would result in excessive entanglement, the claims may be dismissed on that basis on summary judgment"); Minker, 894 F.2d at 1355, 1359-61 (vacating and remanding the district court's order dismissing a terminated pastor's breach of oral contract claim alleging that the church did not live up to its promise to provide the pastor with a better placement at the earliest possible time; the court noted that the parties disputed whether a contract even existed, which could be resolved without intruding upon religious doctrine, but recognized that if discovery showed that the pastor's claim required assessment of religious doctrine then summary judgment should be granted for the church, as "any inquiry into the Church's reasons for asserting that [plaintiff] was not suited for a particular pastorship would constitute an excessive entanglement in its affairs"). However, such cases are inapposite here where discovery has been completed, the parties do not dispute the existence of a contract, and the record demonstrates that further inquiry into

the Church's reasons for terminating Lee would inappropriately intrude on internal Church doctrine and governance concerning a pastor's fulfillment of his duties.
In addition, Lee's assertion that application of the ministerial exception here would allow the church to rely on civil courts to enforce its contracts but simultaneously invoke religion when a contracting party seeks to enforce the contract against the church is unavailing. The ministerial exception does not apply to, and courts may decide, disputes that do not implicate ecclesiastical matters. See Rweyemamu, 520 F.3d at 208; Leavy v. Congregation Beth Shalom, 490 F. Supp. 2d 1011, 1026-27 (N.D. Iowa 2007).

For all of these reasons, the District Court correctly entered judgment in favor of the Church.

IV

For the foregoing reasons, we will affirm.