*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-0801

EBRAHIM RADBOD, APPELLANT,

V.

MICHAEL MOGHIM ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAR-7325-17)

(Hon. Yvonne Williams, Trial Judge)

(Submitted December 23, 2021          Decided February 17, 2022)

*John P. Dean* and *Steven M. Oster* were on the brief for appellant.

*James M. Loots* was on the brief for appellee Michael Moghim.

*Vaughn W. Royal* was on the brief for appellee Masomeh Radbod.

Before EASTERLY and DEAHL, *Associate Judges*, and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia.*[*]

KRAVITZ, *Associate Judge*:  Ebrahim Radbod ("Ebrahim") filed a verified complaint in the Superior Court against his sister, Masomeh Radbod ("Masomeh"), and Masomeh's son, Michael Moghim ("Michael").  The complaint alleged breach

---

[*]  Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

of contract, fraud, and other claims arising from disputes over the ownership of two pieces of real property—one in the District of Columbia, the other in Virginia.

Michael filed a motion for summary judgment after the close of discovery, arguing that the Superior Court lacked subject matter jurisdiction to decide the claims relating to the Virginia property and that all claims relating to both properties were barred by the statute of limitations and the statute of frauds. Ebrahim filed a timely opposition to Michael's motion, supported by deposition transcripts, affidavits, and other evidence. Masomeh did not move for summary judgment.

The Superior Court granted Michael's motion without a hearing and entered summary judgment in favor of both defendants on all claims. The court concluded that it lacked personal jurisdiction over the defendants regarding the property in Virginia, requiring the dismissal of all claims relating to that property. The court concluded further that the claims relating to the property in the District of Columbia were barred in part by the statute of limitations and otherwise foreclosed by the statute of frauds.

Ebrahim appeals, contending that the Superior Court erred in granting summary judgment for a party (Masomeh) who did not request it and on a ground (a lack of personal jurisdiction) not advanced in the one motion before the court (Michael's). Ebrahim contends further that the Superior Court had both personal and subject matter jurisdiction to decide all of the claims in his complaint and that the evidentiary record before the court at the summary judgment stage contained genuine factual disputes over matters material to the proper resolution of the defendants' statute of limitations and statute of frauds defenses.

We agree and therefore reverse the order of summary judgment.

## I. Factual and Procedural Background

Masomeh purchased a vacant commercial building located at 1427 H Street, N.E., Washington, D.C. ("the District of Columbia property") on or around July 17, 1990. Ebrahim states that Masomeh made the purchase in furtherance of a real estate investment plan he and Masomeh developed along with their brother, Ali Radbod, to buy and rehabilitate properties along the H Street Corridor. According to Ebrahim, Masomeh bought the District of Columbia property with her own funds and in her own name but later agreed, in 1997, to sell him a 50% interest in

the property for $80,000 plus half of the property's expenses. Ebrahim states that the agreement was not reduced to writing—and that he did not insist on a deed conveying his 50% interest—because he and Masomeh were close family members who trusted each other and regularly made joint investments based on oral agreements.

Ebrahim contends that he satisfied his obligation under the oral agreement by making an initial payment of $15,000 in 1997, a series of smaller monthly payments over the next several years, and a final payment of $40,000 in 2004. According to Ebrahim, Masomeh then informed him in 2005 that she was increasing the sale price for his 50% share of the District of Columbia property from $80,000 to $150,000 because the property had appreciated in value. Ebrahim says he reluctantly agreed to Masomeh's demand and transferred the additional funds to her in 2006 via a separate real estate transaction.

Masomeh always managed the District of Columbia property. Ebrahim alleges that beginning in 1997 Masomeh periodically told him the amount of his 50% share of the expenses on the property—for taxes, insurance, utilities, upkeep, and repairs—and that he paid Masomeh whatever amount she required. For many years, the property remained vacant and yielded no profits.

Masomeh purchased another investment property on February 26, 2002—a condominium unit located at 3245 Rio Drive, Apartment 1014, Falls Church, Virginia ("the Virginia property"). Masomeh arranged for the deed to the Virginia property to be put in Michael's name but agreed to sell a 50% interest in the property to Ebrahim for $34,000. Ebrahim promptly paid the full amount. Yet as with the District of Columbia property, Ebrahim says he did not insist on a written sales contract or initially request a deed for his share of the Virginia property because of his trusting familial relationships with Masomeh and Michael.

On July 6, 2006, in a lawyer's office, Masomeh executed a deed purporting to transfer a 100% interest in the District of Columbia property to Michael while retaining a life estate for herself. Ebrahim admits he was present in the lawyer's office when Masomeh executed the deed and knew the deed did not acknowledge his 50% interest in the property. Ebrahim alleges, however, that he did not read the deed and did not know Masomeh had retained a life estate for herself.

Ebrahim states that he later asked Michael to execute a deed recognizing his 50% interest in the District of Columbia property. Ebrahim says Michael indicated

a desire to execute a deed as requested but did not want Masomeh to learn of the transaction and never followed through on the request.

Instead, according to Ebrahim, he and Michael signed a one-page written agreement on December 16, 2007 documenting their respective ownership interests in the District of Columbia and Virginia properties. The agreement provided that Ebrahim and Michael were the sole, equal owners of the two properties and were therefore entitled to equal shares of all profits and responsible for equal shares of all expenses and taxes. The agreement provided further that Ebrahim had paid in full for his 50% interests in both properties, and it gave each signatory the first right to purchase the other's ownership share of each property.

Michael informed Ebrahim in 2008 that he wished to sell his share of the Virginia property. Ebrahim exercised his right under the December 16, 2007 agreement to purchase Michael's share, and the two men settled on a price of $60,000. Ebrahim paid the full amount between June 2008 and June 2012, thereby obtaining the second half of what he asserts is now a 100% ownership interest in the Virginia property. Michael did not execute a deed formally conveying ownership of the Virginia property to Ebrahim, stating, again, that he did not want his mother to know of the transaction.

Ebrahim alleges that he went to the District of Columbia property in November 2014 to check on a report of a broken window and discovered, to his surprise, that extensive renovations were underway. Ebrahim says he subsequently learned that Masomeh had leased the property to a sports bar without telling him.

Ebrahim states that since his discovery of the lease on the District of Columbia property in November 2014 he has repeatedly asked Masomeh and Michael to recognize his ownership interests in the two properties and to give him his proper shares of the profits. He alleges that the defendants have refused to execute deeds conveying his rightful ownership shares to him and that, despite his 50% ownership interest in the District of Columbia property and his 100% ownership of the Virginia property, the defendants have failed to give him any profits from the lease on the District of Columbia property and have given him only 50% of the profits from the Virginia property.

Ebrahim filed his complaint on October 27, 2017. He sought damages from Masomeh and Michael for breach of contract, breach of partnership agreement, breach of the duty of good faith and fair dealing, breach of fiduciary duty, conversion, unjust enrichment, and fraud based on conspiracy. He also sought

equitable and declaratory relief quieting title to the properties, declaring his rightful ownership interests in them, imposing a constructive trust, and directing a partition and sale of the District of Columbia property.

The case proceeded through discovery, after which Michael filed a motion for summary judgment. On July 31, 2019, the Superior Court issued a written order granting the motion and entering a final judgment in favor of both defendants on all counts of the complaint. The court determined that it lacked personal jurisdiction to resolve the claims arising from the dispute over the Virginia property because the District of Columbia long-arm statute, D.C. Code § 13-423(a) (2012 Repl.), did not apply in the circumstances and because the defendants did not have the minimum contacts with the District of Columbia necessary to satisfy constitutional requirements. The court determined further that the claims relating to the District of Columbia property were barred by the statute of limitations to the extent they were based on events occurring more than three years before the filing of the complaint, because Ebrahim knew as of the meeting in the lawyer's office on July 6, 2006 that he had been denied his ownership interest in the property. To the extent the claims relating to the District of Columbia property were based on the defendants' alleged failure to share rental profits with Ebrahim within the three-year statute of limitations period, the court concluded that the claims failed

because they were premised on an alleged oral agreement for the sale of land made unenforceable by the statute of frauds, D.C. Code § 28-3502 (2013 Repl.).

This timely appeal followed.

## II. Standard of Review

Our review of the Superior Court's order granting summary judgment is de novo. *Zere v. District of Columbia*, 209 A.3d 94, 98 (D.C. 2019). We apply the same standard the Superior Court was required to apply in considering whether the motion for summary judgment should be granted. *Kuder v. United Nat. Bank*, 497 A.2d 1105, 1106-07 (D.C. 1985). We view the evidentiary materials in the record, including any depositions, documents, electronically stored information, affidavits, declarations, admissions, and interrogatory responses, in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Liu v. U.S. Bank Nat'l Ass'n*, 179 A.3d 871, 876 (D.C. 2018); Super. Ct. Civ. R. 56(c). Summary judgment is properly granted only if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Liu*, 179 A.3d at 876; Super. Ct. Civ. R. 56(a).

### III.   Analysis

*Sua Sponte* Summary Judgment

Ebrahim contends that it was error for the Superior Court to grant summary judgment in favor of one defendant (Masomeh) who did not request it and another (Michael) on a ground not raised in his motion.  We agree.

We determined in *Tobin v. John Grotta Co.*, 886 A.2d 87 (D.C. 2005), that the Superior Court may enter summary judgment against a party *sua sponte* only if the party has been given "prior notice" of the possibility of an adverse summary judgment ruling and an "opportunity 'to come forward with all her evidence' showing triable issues of fact."  *Id*. at 91 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).  We reiterated this view in *Thomas v. District of Columbia*, 942 A.2d 1154 (D.C. 2008), stating that "[a] court may grant summary judgment *sua sponte* when it appears that a party cannot prevail on a claim or defense as a matter of law, so long as the losing party was on notice that it had to come forward with all of its evidence."  *Id*. at 1158.

The Board of Judges of the Superior Court subsequently adopted, verbatim, a 2010 amendment to Rule 56(f) of the Federal Rules of Civil Procedure. *See* Super. Ct. Rule Promulgation Order 17-02, 196 (dated March 29, 2017, effective June 1, 2017); *see generally* D.C. Code § 11-946 (2012 Repl.). The new Rule 56(f) of the Superior Court Rules of Civil Procedure, entitled "Judgment Independent of the Motion," effectively codified *Tobin* and *Thomas*, as follows:

> After giving notice and a reasonable time to respond, the court may:
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

The parties have not addressed Rule 56(f) in their filings in this court. The rule, however, took effect more than two years before the Superior Court issued its summary judgment order. And by its express terms, the rule makes plain that a Superior Court judge has authority to grant summary judgment in favor of a party who has not requested it—or on a ground not advanced by any moving party—only if the judge has provided the party against whom judgment would be entered notice of the possibility of an adverse pretrial determination of a claim or defense (and the grounds therefor) and a reasonable opportunity to present contrary evidence and argument. As did *Tobin* and *Thomas* before its adoption, Rule 56(f)

plays a critical access-to-justice role in the civil process by guaranteeing all litigants meaningful notice and a fair opportunity to defend the legal sufficiency of their claims and defenses before judgment can be entered against them. It is therefore essential that the preconditions to the *sua sponte* entry of a summary judgment order set forth in the rule be strictly enforced.[1]

The Superior Court did not satisfy the requirements of Rule 56(f) and our precedents. Without giving Ebrahim any notice or opportunity to be heard, the court (1) granted summary judgment in favor of the defendants on all claims related to the Virginia property for a lack of personal jurisdiction, even though the

---

[1] All of the federal circuit courts have similarly interpreted the identical federal rule to require strict compliance with the rule's preconditions. *See, e.g.*, *Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 103 (1st Cir. 2017); *United States v. Assa Co.*, 934 F.3d 185, 190 (2d Cir. 2019); *Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018); *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015); *Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d 186, 188 (5th Cir. 2016); *James v. City of Detroit*, Nos. 20-1805, 21-1053, 2021 U.S. App. LEXIS 35069, at *13-16 (6th Cir. Nov. 23, 2021); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1034-35 (7th Cir. 2019); *Montgomery v. City of Ames*, 749 F.3d 689, 697 (8th Cir. 2014); *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 713-14 (9th Cir. 2020); *Bonney v. Wilson*, 817 F.3d 703, 710 (10th Cir. 2016); *Amy v. Carnival Corp.*, 961 F.3d 1303, 1310-11 (11th Cir. 2020); *Robbins v. District of Columbia*, 650 Fed. Appx. 37, 40-41 (D.C. Cir. 2016); *NeuroGrafix v. Brainlab, Inc.*, 787 Fed. Appx. 710, 717 (Fed. Cir. 2019); *see generally Allen v. United States*, 495 A.2d 1145, 1149 (D.C. 1985) (en banc) (where the language of a local rule of procedure is identical to the language of the corresponding federal rule, "the interpretive gloss placed upon the federal rule by the federal courts guides our construction of the local rule").

only motion for summary judgment (Michael's) raised no challenge to the court's personal jurisdiction over the defendants or the claims relating to the Virginia property, and (2) granted summary judgment in favor of Masomeh on all counts in the complaint, even though Masomeh did not file a motion for summary judgment. Both rulings exceeded the court's authority and must be vacated.

Personal Jurisdiction

The court's ruling on personal jurisdiction was incorrect in any event. Michael affirmatively acknowledged the Superior Court's jurisdiction over his person from the moment he first appeared in the case, stating in his answer to the complaint that "[p]ersonal jurisdiction over Defendant Moghim is admitted solely for purposes of this litigation." Although less direct, Masomeh implicitly conceded the Superior Court's jurisdiction over her person under the long-arm statute, admitting in her answer that she had "transacted business" and had "an interest in real property" in the District of Columbia. *See* D.C. Code § 13-423(a)(1), (5) (2012 Repl.). Neither defendant, moreover, filed a motion to dismiss the complaint for a lack of personal jurisdiction (or any other reason).

"[A] defense of lack of personal jurisdiction [is] waived if it [is] neither raised by motion nor included in a responsive pleading." *Cusimano v. First Md. Sav. and Loan*, 639 A.2d 553, 557 n.5 (D.C. 1994); *see also* Super. Ct. Civ. R. 12(h)(1) ("A party waives [a] defense [of lack of personal jurisdiction] by . . . (B) failing to either . . . (i) make it by motion under this rule . . . or (ii) include it in a responsive pleading."). Masomeh and Michael therefore waived any challenge to the Superior Court's power to decide the case based on a lack of personal jurisdiction, and it would have been error for the Superior Court to dismiss any of Ebrahim's claims on this ground even had one or both of the defendants actually raised a challenge to personal jurisdiction at the summary judgment stage.

Subject Matter Jurisdiction

Michael's motion for summary judgment did include a challenge to the court's subject matter jurisdiction to decide the claims related to the Virginia property. The Superior Court did not address its subject matter jurisdiction, but we will briefly discuss it here, since questions about a court's subject matter jurisdiction cannot be waived and may be raised at any time. *See Adair v. United States*, 391 A.2d 288, 290 (D.C. 1978); Super. Ct. Civ. R. 12(h).

It has been established for more than two centuries that a court of equity with personal jurisdiction over a party in a case involving claims of fraud, trust, or contract relating to land may compel the party to take whatever actions regarding the land are necessary to give full effect to the court's decree against the party, even if the land is located in another jurisdiction. *See Massie v. Watts*, 10 U.S. 148, 160 (1810); *see also Phelps v. McDonald*, 99 U.S. 298, 308 (1878); *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1529 (D.C. Cir. 1984) (vacated and remanded on other grounds by *Weinberger v. Ramirez de Arellano*, 471 U.S. 1113 (1985)). Given the Superior Court's jurisdiction over the defendants' persons in this case, the court therefore clearly had subject matter jurisdiction to decide at least the majority of the claims relating to the Virginia property[2] and, as necessary to give full effect to its decision, to order either or both defendants to take whatever actions relating to that property the defendants were otherwise empowered to do, including, if appropriate, the execution of a deed transferring ownership of the property to Ebrahim. *See Phelps*, 99 U.S. at 308; *Ramirez de Arellano*, 745 F.2d at 1529.

---

[2] One claim alleged in the complaint to which the Superior Court's power might not extend is Ebrahim's request that the court quiet title to the Virginia property, as the act of quieting title does not appear to be something either defendant could do without the involvement of a Virginia court. The parties have not briefed the Superior Court's power to quiet title to real property in another jurisdiction, however, so we simply flag the issue here for possible consideration in the first instance on remand.

Statute of Limitations

The Superior Court found that Ebrahim knew of Masomeh's and Michael's repudiation of his ownership interest in the District of Columbia property as of the meeting in the lawyer's office on July 6, 2006. Based on this finding, the court determined that the applicable three-year statute of limitations period on Ebrahim's claims relating to the District of Columbia property began to run, at the latest, on July 6, 2006. *See* D.C. Code § 12-301(a)(7), (8) (2021 Supp.). The court ruled, accordingly, that all claims relating to the District of Columbia property were time-barred except to the extent they were based on the defendants' alleged failure to give Ebrahim his proper share of the profits from the lease on the property in the three-year period immediately preceding the filing of the complaint.

Ebrahim contends that competent evidence in the record at the summary judgment stage supports his position that he had neither actual nor inquiry notice of the breach of his 1997 oral agreement with Masomeh until his discovery of the renovations at the property in November 2014, less than three years before he filed the complaint on October 27, 2017. Ebrahim argues that the record therefore contained a genuine factual dispute material to whether the discovery rule deferred

the accrual of his claims until at least November 2014, rendering impermissible the grant of summary judgment on statute of limitations grounds.  We agree.

A cause of action generally accrues, and triggers the commencement of the applicable statute of limitations period, at the time injury occurs.  *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 425 (D.C. 1986).  In particular, a breach of contract claim ordinarily accrues on the date the contract is breached.  *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198-99 (D.C. 1984).

Under the "discovery rule," however, a breach of contract claim does not accrue, and the statute of limitations period does not begin to run, "until the plaintiff knows, or in the exercise of reasonable diligence should know, of the injury."  *Ehrenhaft*, 483 A.2d at 1203.  More generally, a cause of action subject to the discovery rule accrues when the plaintiff knows, or by the exercise of reasonable diligence should know, of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.  *Bussineau*, 518 A.2d at 425.  "Surely it is inconsistent with our notions of justice to interpret the 'accrual' of a cause of action to occur prior to a point in time at which a person would reasonably have knowledge of any wrongdoing."  *Ehrenhaft*, 483 A.2d at 1202.

A person nonetheless has a duty to act with reasonable diligence in investigating the existence of possible causes of action and is charged with implicit knowledge (inquiry notice) of a claim if his lack of actual knowledge of the claim is due solely to his failure to meet his duty to investigate. *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). What constitutes a reasonably diligent investigation is a "highly factual analysis" that requires consideration of all relevant circumstances, including the defendant's conduct and misrepresentations, the reasonableness of the plaintiff's reliance on the defendant's actions, the "confidence reposed by the plaintiff in the defendant," and the existence of a "confidential or fiducial relationship" between the parties. *Id.* at 372, 374, 376. In some circumstances, "the relevant facts may be such that it may be reasonable to conduct no investigation at all." *Id.* at 372.

The statute of limitations is an affirmative defense on which the defendant ultimately bears the burden of proof at trial. *Brin v. S.E.W. Investors*, 902 A.2d 784, 800 (D.C. 2006). At the summary judgment stage, however, the plaintiff must point to specific evidence in the record sufficient to justify the factfinder in finding the suit timely under the discovery rule. *Maupin v. Haylock*, 931 A.2d 1039, 1042-43 (D.C. 2007). If the plaintiff satisfies this burden of production and establishes the existence of a disputed question regarding his diligence in investigating a

possible cause of action, then summary judgment must be denied. *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 946 (D.C. 2003); *Ray v. Queen*, 747 A.2d 1137, 1143-44 (D.C. 2000). Put another way, summary judgment may be granted on statute of limitations grounds only if the Superior Court determines, after viewing the facts and circumstances in the light most favorable to the plaintiff, that the evidence concerning the commencement of the running of the statute of limitations is so clear that no reasonable factfinder could rule for the plaintiff on the issue. *Brin*, 902 A.2d at 795, 801. Absent such a determination, the case must be presented to the jury on appropriate instructions. *Id*. at 795.

Ebrahim has satisfied his burden of pointing to specific facts in the record sufficient to support a finding that his claims relating to the District of Columbia property were timely filed under the discovery rule. Several excerpts from the transcript of Ebrahim's sworn discovery deposition were before the Superior Court as part of the summary judgment litigation. As reflected in those excerpts, Ebrahim testified that he did not learn until shortly before Hannukah, in late 2014, that Masomeh had retained a life estate to the property and that it was not until his discovery of the life estate that he realized Masomeh and Michael were denying his 50% interest in the property. Ebrahim testified further that he believed, based on repeated promises from Michael, that Michael would give him a deed for the

District of Columbia property acknowledging his interest. Ebrahim's deposition testimony was corroborated in the record by the written agreement he says he and Michael signed on December 16, 2007 stating they were equal "sole owners" of the District of Columbia and Virginia properties. The portions of Ebrahim's deposition transcript in the record, moreover, are replete with Ebrahim's testimony about his total trust and confidence in Masomeh and about what he always believed were her good faith efforts on behalf of the family real estate investment business.

This evidence was sufficient to establish the existence of a genuine factual dispute over the date on which Ebrahim actually learned of Masomeh's and Michael's decision to repudiate his interest in the District of Columbia property. It also was sufficient to establish the existence of a genuine factual dispute over the reasonableness of Ebrahim's diligence in investigating possible causes of action against Masomeh and Michael. Given the clear materiality of both disputes to the application of the discovery rule, it was error for the Superior Court to enter even partial summary judgment on statute of limitations grounds.

Statute of Frauds

The Superior Court ruled that Ebrahim's claims relating to the District of Columbia property were barred as a matter of law by the statute of frauds to the extent they were not untimely under the statute of limitations. This, too, was error.

Under the statute of frauds, an action to enforce a contract for the sale of an interest in real estate may not be brought unless the agreement on which the action is based is in writing. *See* D.C. Code § 28-3502. The statute is "'intended to guard against the perils of perjury and error in the spoken word, and to protect defendants against unfounded and fraudulent claims.'" *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1065-66 (D.C. 1980) (quoting 3 WILLISTON ON CONTRACTS § 448 at 344 (3d ed. 1960)).

The statute's preference for written contracts governing the sale of interests in real property, however, is not absolute. Under the broad principle of equitable estoppel, we have long recognized several exceptions to the reach of the statute in real estate transactions. *Brown v. Brown*, 343 A.2d 59, 61 (D.C. 1975). One well established exception is the full or partial performance by a person relying on an oral contract disposing of an interest in land. *See, e.g.*, *Interdonato v. Interdonato*, 521 A.2d 1124, 1139 (D.C. 1987) (plaintiff's partial performance of alleged oral contract for the disposition of land estops defendant from interposing statute of

frauds defense); *Brown*, 343 A.2d at 61-62 (same); *Amberger & Wohlforth, Inc. v. District of Columbia*, 300 A.2d 460, 463 (D.C. 1973) ("Partial or complete performance under an oral contract [for the disposition of land] may remove a case from the applicability of the statute."). A genuine factual dispute in the record over whether a plaintiff has fully or partially performed an alleged oral contract for the disposition of land therefore prohibits the entry of summary judgment for the defendant on the ground that the contract is unenforceable under the statute of frauds. *See Interdonato*, 521 A.2d at 1139.

The record here contained ample evidence that Ebrahim performed his obligations under the alleged 1997 oral contract with Masomeh to purchase a 50% interest in the District of Columbia property. Ebrahim testified in his deposition that he paid the initial price of $80,000 between 1997 and 2004 and later transferred additional funds to Masomeh in 2006 to accommodate her unilateral decision to increase the purchase price to $150,000. Ebrahim also testified that from 1997 through 2013 he regularly paid Masomeh whatever she told him was his 50% share of the expenses on the property, including taxes, insurance, utilities, upkeep, and repairs. Ebrahim's deposition testimony was corroborated by a sworn affidavit from Ali Radbod, who stated that he was present in 1997 when Masomeh agreed to sell a 50% interest in the District of Columbia property to Ebrahim, that

Ebrahim paid the $150,000 purchase price "in full" "over time until approximately 2006," and that Ebrahim "paid for at least half of the costs" for the property since "as early as 1997."

This evidence was sufficient to create a genuine factual dispute over whether Ebrahim at least partially performed the alleged oral contract with Masomeh for the purchase of a 50% interest in the District of Columbia property. Summary judgment therefore could not properly be granted on the ground that the oral contract was unenforceable under the statute of frauds.

## IV.    Conclusion

For the foregoing reasons, the Superior Court's order granting summary judgment in favor of Masomeh Radbod and Michael Moghim is

*Reversed.*